IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


PAUL PERAZA,                          :
          Plaintiff                   :
                                      :
     v.                               :     CIVIL NO.3:CV-15-1224
                                      :
                                      :     (Judge Conaboy)
UNITED STATES OF AMERICA,             :
          Defendant                   :
_____

**MEMORANDUM**
**Background**

          Paul Peraza, an inmate presently confined at the United

States Penitentiary, Beaumont, Texas filed this pro se Federal Tort

Claims Act (FTCA) complaint.  Named as Defendant is the United

States of America.  Service of the Complaint was previously

ordered.

          Plaintiff states that while previously confined by the

Federal Bureau of Prisons (BOP) at the United States Penitentiary,

Lewisburg, Pennsylvania (USP-Lewisburg) he was improperly placed

in restraints on April 1, 2014, June 3, 2014, and July 31, 2014.

See Doc. 1, ¶ IV (2).  The Complaint contends that the initial use

of ambulatory restraints on all three dates was unwarranted and

they were applied out of sight from surveillance cameras because

they "were purposefully placed on the plaintiff as tightly as

possible to purposefully cause the plaintiff harm."[1]  Id. at (3).

_____

          [1] Ambulatory restraints are commonly described as soft and
hard restraint equipment (hand, leg, and waist restraints)  which
still allow a prisoner to eat, drink, and take care of basic human
needs without staff intervention.

It is also alleged that despite the Plaintiff's complaints, prison officials including medical staff members refused to loosen the restraints causing him to suffer nerve damage and permanent scarring.

Peraza elaborates that on April 1, 2014 prison officials placed him in ambulatory restraints as tightly as possible to teach him a lesson.[2]  While those restraints were being applied, Peraza claims that he was choked by a correctional officer to keep him quiet while videotaping was being performed.  After the restraints were applied, Plaintiff asserts that he was struck on the left side of his face by a correctional lieutenant.  See id. at (6).  After being in ambulatory restraints for a period of four (4) hours, the Plaintiff was allegedly transferred to overly tight four point restraints because he was making noise.[3]  He purportedly remained in the four point restraints for six (6) hours until he was returned to ambulatory restraints for another eighteen (18) hours.[4]

On June 3, 2014, Peraza contends that he was left in

_____

[2]  Defendant points out that the restraints were actually employed on April 2, 2014.

[3]  Four point restraints are viewed as being a measure of last resort.  See  Williams v. Benjamin, 77 F.3d 756, 763  (4th Cir. 1996)(courts have approved the limited use of four point restraints, chaining a prisoner to his bed in a spreadeagle position, when other forms of prison discipline have failed).

[4]  It is noted that during one restraint check Plaintiff's leg restraints were slightly loosened.

overly tight ambulatory restraints for fourteen (14) hours and was also purportedly struck on the chin by a correctional officer with a closed fist as those restraints were being applied.  See Id. at (10).  The Complaint adds that prison corrections and medical staff members ignored the inmate's requests to have the restraints loosened.

Peraza similarly asserts that he was subjected to unnecessary physical abuse during a purportedly unwarranted July 31, 2014 application of ambulatory restraints which were again applied too tightly. He also alleges that staff ignored his requests for the restraints to be loosened.  With respect to his allegation of excessive force, Plaintiff maintains that he was choked by an officer in an effort to keep him quiet.  The Complaint adds that Peraza was subsequently placed in an unsanitary cell where he was forced to clean a toilet with his bare hands and denied opportunity to wash his hands prior to eating while in ambulatory restraints for twenty-eight (28) hours.

Defendant has responded to the Complaint by filing a motion to dismiss or in the alternative for summary judgment.  See Doc. 27.  The opposed motion is ripe for consideration.

### **Discussion**

**Motion to Dismiss**

Defendant's pending dispositive motion is supported by

evidentiary materials outside the pleadings.  Federal Rule of

Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or
> 12(c), matters outside the pleading are
> presented to and not excluded by the
> court, the motion must be treated as one
> for summary judgment under Rule 56. All
> parties must be given reasonable
> opportunity to present all the material
> that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials

accompanying the Defendant's motion.  Thus, the motion will be

treated as solely seeking summary judgment.  See Latham v. United

States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to

dismiss has been framed alternatively as a motion for summary

judgment such as in the present case, the alternative filing "is

sufficient to place the parties on notice that summary judgment

might be entered."

**Summary Judgment**

Defendant argues that it is entitled to entry of summary

judgment on the grounds that: (1) any constitutional claims

against the Defendant are barred by the doctrine of sovereign

immunity; (2) the discretionary function exception bars

consideration of Peraza's claims since the BOP had cause to apply

restraints on all three occasions at issue; (3) indisputable

compelling evidence establishes that the restraints were properly

and reasonably applied and Plaintiff's injuries were caused by his

4

own conduct; (4) the undisputed evidence, especially the videotape footage, establishes that Plaintiff was not assaulted by correctional staff; and (5) this action cannot proceed because Plaintiff has no expert witness.

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the

allegations in its complaint.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. (internal quotations omitted); <u>see also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." <u>Celotex</u>, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**FTCA**

The FTCA provides a remedy in damages for the simple negligence of employees of the United States.  <u>See</u> <u>United States v. Muniz</u>, 374 U.S. 150, 150 (1963).  Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts.  <u>See</u> <u>Simon v. United States</u>, 341 F. 3d 193, 200 (3d Cir. 2003).

A plaintiff pursuing an FTCA claim must show:  (1) that a duty was owed to him by a defendant; (2) a negligent breach of

said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss.  Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961).  The only proper Defendant for purposes of an FTCA claim is the United States of America. See 28 U.S.C. § 2679(d).  Except for limited circumstances, an FTCA claim in federal court is limited to recovery of the sum certain amount requested in the underlying administrative claim. See McMichael v. United States, 856 F.2d 1026, 1035 (8th Cir. 1988).

A federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred.  28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence.  See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443.

The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred.  Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the

7

evidence.  <u>Baum v. United States</u>, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[5]

**Eleventh Amendment**

Defendants' initial argument contends that Plaintiff's action, to the extent that it raises constitutional claims for monetary damages, is barred by the doctrine of sovereign immunity. <u>See</u> Doc. 42, p. 27.

The United States is generally immune from suit absent an explicit waiver of sovereign immunity, <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980).  This "immunity is jurisdictional in nature," <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994), and extends to government agencies and employees sued in their official capacities.  <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996); <u>Chinchello v. Fenton</u>, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations." <u>Germosen v. Reno</u>, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.).  Claims such as Plaintiff's contention that he was housed in an unsanitary cell without being able to wash his hands clearly appear to be seeking relief under the Eighth Amendment. Therefore, entry of summary judgment in favor of the Defendant is

---

[5]  Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury.  <u>Hamil v. Bashline</u>, 392 A.2d 1280, 1284 (Pa. 1978).

appropriate to the extent that the Complaint asserts claims that USP-Lewisburg officials violated Peraza's constitutional rights, i.e., any Eight Amendment claims that Plaintiff was subjected to excessive force or unconstitutional conditions of confinement.

**Discretionary Function**

The second summary judgment argument contends that since the BOP had sufficient cause to apply restraints on all three dates at issue, the inmate's FTCA claims regarding the decisions to do so are barred by the discretionary function exception.[6]  See Doc. 42, p. 28.

In support of their argument, Defendant has submitted a declaration under penalty of perjury by USP-Lewisburg Supervisory Investigative Agent (SIA) Suzanne Heath.  See Doc. 41-1, p. 1. Heath notes that Peraza has a history of escape and assault and has been issued close to 100 misconducts during the course of his federal confinement.  She acknowledges that the BOP has policies regarding the use of force against prisoners as well as the application of restraints.  See 28 C.F.R. § 552.20, et seq.

Those regulations authorize prison staff to employ restraints to the extent necessary to gain control over inmates who have destroyed property; inflicted injury upon themselves;

---

[6]  This argument does not address any claims that restraints were intentionally applied too tightly or that Plaintiff was assaulted during the application of restraints.  See  Millbrook v. United States, 133 S.Ct. 1441, 1444 (2013)(the United States waives immunity for certain intentional torts committed by prison guards). Rather, it is limited to the decision making process.

become violent or displayed signs of imminent violence.  Heath
adds that the BOP has special reporting requirements which are
triggered whenever such restraints are undertaken.[7]  She also
points out that loosely applied restraints become ineffective as
well as a security issue.  In addition, Heath points out that
inmates can injure themselves by twisting and pulling on their
restraints.  In light of those concerns, Peraza's restraints were
routinely checked.

According to Heath's supporting declaration as well as
accompanying written reports and video footage from the three
dates at issue, Peraza became disruptive on April 2, 2014 when he
refused to allow staff to secure his hand restraints, made verbal
threats towards staff, and refused to allow his cell mate to be
restrained.  See Tindell v. Beard, 351 Fed. Appx. 591, 596 (3d
Cir. 2009)(consideration of video footage when considering summary
judgment argument is appropriate).  When the Plaintiff eventually
submitted to hand restraints, he was removed from his cell
searched and placed into ambulatory restraints.  Although the
inmate attempted to circumvent application of the waist restraint
(a/k/a Martin Chain) by extending his abdominal muscles, it was
eventually placed in a proper fashion.  A medical assessment was

---

[7]  Correctional staff are required per BOP policy to check a
prisoner in four point restraints every fifteen minutes.   In
addition a Lieutenant is required to conduct a restraint check
every two hours.

performed and revealed no injury.  Furthermore, the supervising lieutenant checked the restraints to ensure that they were properly applied.

While still in the restraints Peraza again became disruptive approximately three hours later by trying to break a stool in his cell and verbally threatening correctional officers. As a result he was upgraded to four point restraints and a medical assessment revealed no injury.  Approximately five hours later, the Plaintiff was removed from the four point restraints after calming down and was returned to ambulatory restraints until they were removed the next day.

On June 3, 2014, Peraza began to repeatedly bang on his cell door.  He was placed in hand restraints, removed from his cell and searched.  Meanwhile, his cell was searched.  However, the inmate refused to submit to hand restraints so that he could be taken back to his cell and made threats towards correctional staff.  As a result of his unruly behavior, Peraza was placed in ambulatory restraints where he remained for approximately thirteen (13) hours.  Once again a medical assessment revealed no injury.

On July 31, 2014, Plaintiff allowed a meal tray being delivered by a  correctional officer to fall to the floor and accompanied that act with verbal threats.  This latest outburst also resulted in the Plaintiff being placed in ambulatory restraints for approximately twenty-seven (27) hours.

As previously discussed, a plaintiff presenting an FTCA claim must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) the negligent breach was the proximate cause of the plaintiff's injury/loss.  The United States is only liable under the FTCA for conduct by government employees while acting within their scope of employment.  Matsko v. United States, 372 F.3d 556, 559 (3d Cir. 2004).  The undisputed record shows that USP-Lewisburg officials were acting within the scope of their employment

A significant limitation on FTCA claims is imposed by 28 U.S.C. § 2680(a), which provides that liability may not be premised on a claim against a government employee which is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." "Conduct is not discretionary unless it involves an element of judgment or choice." Koch v. United States,  814 F. Supp. 1221, 1227 (M.D. Pa. 1993).  Federal employees such as correctional officers employed by the Bureau of Prisons simply "do not have discretion to violate mandatory requirements" or constitutional rights. Koch, 814 F. Supp. at 1228.

In Berkovitz v. United States, 486 U.S. 531 (1988), the United States Supreme Court adopted a two part inquiry with respect to § 2680(a).  First, a court must decide if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." Id. at 536.  If so, "the

12

employee has no rightful option but to adhere to the directive."
Id.  The second part of the inquiry provides that if the decision
was one "which balances competing considerations or identifiable
policy factors such as budgetary considerations, safety concerns,
allocation of limited resources, etc., it may be discretionary."
Koch, 814 F. Supp at 1227, citing Johnson v. United States,
Department of the Interior, 949 F.2d 332, 340 (10th Cir. 1991).

        With respect to the first prong of Berkovitz, 18 U.S.C. §
4042 imposes a general duty of care on the BOP to safeguard its
prisoners.  However, the regulation does not dictate the manner by
which that duty is to be fulfilled.  See Cohen v. United States,
151 F.3d  1338,1343 (11th Cir. 1998).  Hence, the BOP has the
ability to exercise its judgment on how its duty under § 4042 is
to be fulfilled.

        While the BOP imposes a duty upon its employees to use
reasonable care and ordinary diligence to protect the safety of
inmates, restraints may be employed at the discretion of prison
officials  to the extent necessary to gain control over inmates
who have destroyed property; inflicted injury upon self; become
violent or displayed signs of imminent violence.  There is no
indication that there was a specific federal statute or regulation
or policy which required the USP-Lewisburg correctional staff to
take a particular course of action regarding their decisionmaking
as to whether or when to apply restraints to Peraza.

Since the challenged decision-making of the prison officials in this case clearly involved an element of choice and the determination to apply restraints, either ambulatory or four point, was based upon consideration of legitimate issues of correctional safety, this Court agrees that the discretionary function exception is applicable to any claims regarding the decision-making by USP-Lewisburg staff with respect to the use of restraints against Peraza.  See Donaldson v. United States, 281 Fed. Appx. 75, 77 (3d Cir. 2008)(discretionary function exception applies to prisoner's claim against federal prison officials).

There have been no facts presented which could support a claim that Plaintiff's conduct at USP-Lewisburg did not warrant intervention by prison staff on the relevant dates.  For example, videotape evidence presented by the Defendant clearly shows Peraza acting in a disruptive and destructive manner (slamming a stool against the wall of his cell) prior to the imposition of four point restraints on April 2, 2014.  The determinations as to whether restraints, either ambulatory or four point, should be employed against Peraza were clearly discretionary decisions.  As such, the challenged decision-making by USP-Lewisburg staff falls within the discretionary function exception.  Accordingly, entry of summary judgment in favor of the Defendant under the discretionary function exception is warranted with regards to any claims regarding the multiple decisions made by the USP-Lewisburg staff to apply restraints against the Plaintiff.

14

**Lack of Medical Expert**

The next argument maintains that Plaintiff's action cannot proceed because he does not have medical expert testimony showing that the application of restraints actually caused his injuries. See Doc. 42, p. 38.  The Defendant correctly notes that Peraza has previously asserted that no expert testimony is necessary to pursue his claims.

Institutional medical records submitted by the Defendant acknowledge that Plaintiff had bilateral swelling in his hands and a one inch abrasion on his left wrist following the April 2, 2014 use of restraints.[8]  See Doc. 41-1, Exhibit B, Attachment A, pp. 329-37.  Additionally those records show that Peraza suffered intermittent blistering of his wrists following the June 3, 2014 related events.  As a result of the July 31, 2014 incident, Plaintiff again suffered swelling of his hands, redness and wrist abrasions which prison staff attributed to the prisoner refusing to keep his restraints at his wrist. However, those same records indicate that the injuries described above were caused by Plaintiff's intentional manipulation of his restraints which was undertaken in direct contradiction to repeated warnings not to do so by the USP-Lewisburg medical staff.

---

[8]   Defendant contends that the swelling occurred because Peraza pushed the restraints up his arms for the purpose of manipulating his situation into a claim for compensation.

A written evaluation by Doctor Andrew Ellinger of USP-Lewisburg provides that, although Plaintiff suffered nerve damage to his wrist, those injuries are attributable to the inmate's non-compliant manipulation of restraints.  <u>See</u> Doc. 50, ¶¶ 153-162. As discussed above, a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. In order to present a <u>prima</u> <u>facie</u> case of medical malpractice /negligence under Pennsylvania state law, a plaintiff has the burden of presenting expert testimony by an appropriate licensed professional who can testify to a reasonable degree of medical certainty that the actions or omissions of the defendant deviated from acceptable medical standards, and that said deviation constituted a substantial factor in causing the Plaintiff's injury.  <u>Simpson v. Bureau of Prisons</u>, 2005 WL 2387631 *5 (M.D. Pa. Sept. 28, 2005)(Vanaskie, C.J.).[9]

Rule 1042.3 requires a person who brings a claim of medical malpractice/negligence to file an appropriate certificate of merit either with the complaint or within sixty (60) days

---

[9]  The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons."  <u>Berman v. United States</u>, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002) (citing <u>Brannan v. Lankenau Hospital</u>, 490 Pa. 588 (1980).  However, the instances when expert opinions may be unnecessary are rare.  <u>See</u> <u>Simpson</u>, 2005 WL *6; <u>Arrington v. Inch</u>, 2006 WL 860961 *7 (M.D. Pa. March 30, 2006) (Conner, J.).

thereafter. The Rule 1042.3 certificate must certify that either: (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the conduct which is the subject of the complaint fell outside acceptable professional standards and was a cause in bringing about the harm; or (2) the claim of deviation by defendant from an acceptable professional standard is based solely upon allegations that other licensed professionals for whom defendant is responsible deviated from an acceptable professional standard; or (3) expert testimony of an appropriate licensed professional is unnecessary.

Courts within this circuit have recognized that Rule 1042.3 is substantive law and should be applied by federal courts sitting in diversity. Schwalm v. Allstate Boliler & Construction, 2005 WL 1322740 *1 (M.D. Pa. May 17, 2005)(Caputo, J.); Scaramuzza v. Sciolla, 345 F. Supp.2d 508, 509-10 (E.D. Pa. 2004). It has also been held that a Plaintiff pursuing an FTCA claim must comply with Pennsylvania substantive law. Arrington, 2006 WL 860961 at *7. In addition, Plaintiff's incarceration or pro se status is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of coming forth with expert medical testimony. See Perez v. Griffin, 2008 WL 2383072 *3 (M.D. Pa. June 9, 2008)(Rule 1042.3 applies to incarcerated and pro se

17

plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply).

It is undisputed the Plaintiff suffered nerve damage and other injuries.  While he contends that expert testimony is not required, the issue of causation of Peraza's injuries comes down to a factual determination as to whether they were the result of his own ill advised manipulation of the restraints or because they were applied too tightly by prison officials.

In order to prove his case, Peraza must establish that the USP-Lewisburg medical staff deviated from acceptable medical standards when they made medical assessments that the restraints were not applied too tightly and thereafter when they concluded that Plaintiff's injuries were caused by his own reckless behavior.  Plaintiff must also show that the deviation was the proximate cause of his injuries.

Peraza has not identified any medical expert or submitted a report from any medical expert.  Since Plaintiff has not submitted a proper Rule 1042.3 certificate of merit or otherwise indicated that he has retained an expert witness, it is appropriate for this court to dismiss all of his pending FTCA medical malpractice/negligence claims without prejudice.  See Osorio v. United States, 2007 WL 2008498 *2 (W.D. Pa. July 5, 2007); see also Henderson v. Pollack, 2008 WL 282372 *4 (M.D. Pa. Jan 31, 2008)(Caldwell, J.)(citing Hartman v. Low Security

18

Correctional Institution, Allenwood, 2005 WL 1259950 * 3 (M.D. Pa. May 27, 2005)(Muir, J.).

**Assault Claims**

As previously discussed, Plaintiff asserts that he was choked during the April 2, 2014 application of ambulatory restraints.  Peraza also maintains that he was struck on the left side of his face.  During the June 3, 2014 application of ambulatory restrains Peraza claims that he was struck on the chin. With respect to the July 31, 2014 application of ambulatory restraints the Complaint again alleges that Plaintiff was choked in an effort to keep him quiet.

Video footage of all three incidents has been submitted by the Defendant.  The video evidence has been reviewed by this Court in a light most favorable to the Plaintiff, See Tindell v. Beard, 351 Fed. Appx. 591, 596 (3d Cir. 2009)(consideration of video footage when considering summary judgment argument is appropriate).

Based upon a review of the footage from April 2, 2014 there is no indication that Peraza was being choked.  Rather, the inmate is heard talking throughout the entire episode.  It also cannot be determined that Peraza was punched or struck on the left side of his face.  Video from June 3, 2014 also does not support Plaintiff's claim of being struck on the chin.  A careful review of the incident additionally does not reveal that Peraza was

19

intentionally struck by any of the involved officers.  It is apparent from the footage that any touching of the Plaintiff's chin was at most brief and incidental.  There is simply no basis for a claim that there was an intentional effort to inflict harm to the Plaintiff by the involved USP-Lewisburg correctional officers.

With respect to the July 31, 2014 application of restraints, the submitted video does not depict any body movements by the officers which could be deemed as choking the prisoner. Moreover, Peraza is again heard talking throughout the episode undermining any claim that he was being choked.  It is also noted that the footage from all three dates shows medical assessments being immediately preformed which concluded that there was no evidence that Plaintiff was punched, choked, or struck.

In conclusion, the undisputed video evidence shows that the defendant is entitled to entry of summary judgment with respect to the allegations that Plaintiff was the victim of either an assault or battery on those three dates.

**Application of Restraints**

The final summary judgment argument asserts that the indisputable record and video show that Plaintiff's restraints were properly applied each time and any injury he suffered was caused by his self admitted attempts to manipulate his restraints in order to manufacture a lawsuit.  <u>See</u> Doc. 42, p. 32.  As

previously discussed, the Defendant has submitted video footage relating to all three dates at issue which have been reviewed by this Court.

Review of the video footage shows that, during each incident, Plaintiff made similar complaints that his restraints were being applied too tightly and that he was the victim of a retaliatory scheme.  Each time the restraints, either ambulatory or four point, were applied there was an immediate assessment by a member of the prison's medical staff.  In addition the supervising lieutenant also examined the restraints to make sure they were properly applied.  While in restraints Peraza was provided with regular periodic medical and non-medical evaluations as required by BOP regulations.  Those evaluations were conducted by multiple different correctional and medical staff members.

Also submitted for consideration is documentary evidence in the form of institutional logs and memoranda showing that Peraza made numerous verbal statements indicating that he was going to manipulate his restraints in an effort to injure himself so that he could initiate a lawsuit.

Based upon the wealth of undisputed evidence submitted by the Defendant, especially the videotapes of the underlying applications of restraints and Plaintiff's institutional medical records as well as the prison monitoring logs following each restraint placement, it is clear that, even viewing the record in a light most favorable to the pro se Plaintiff, there is

21

substantial evidence showing that the applications of restraints underlying this matter were carried out in a reasonable and non-negligent fashion.  In light of Plaintiff's failure to come forward with expert testimony and his repeated statements that he was manipulating his restraints to cause injury so that he could pursue litigation, entry of summary judgment is warranted.  An appropriate Order will enter.



S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: MARCH 28, 2017